## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MARY A. GARCIA, | ) |
|           Plaintiff, | )   No. |
| v. | ) |
| SUMMIT TECHNICAL SOLUTIONS, LLC, BRIAN SUTTON, and TAMIE SHARP, | ) |
|           Defendants. | ) |

## COMPLAINT

Plaintiff, MARY A. GARCIA, by counsel, Moor Law Office, P.C., complaining of SUMMIT TECHNICAL SOLUTIONS, LLC, BRIAN SUTTON and TAMIE SHARP, states as follows for her Complaint at Law:

1. This is an action for employment discrimination brought to secure relief, legal and equitable, for discrimination based on race and retaliation, brought pursuant to 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure protection of, and to redress deprivation of, rights guaranteed by federal law, which rights provide for injunctive and compensatory relief for illegal discrimination in employment.

### Jurisdiction and Venue

2. Jurisdiction over this court is conferred on the Court by 42 U.S.C. §1981.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) because the Defendant's headquarters are located in District.

### Parties

4. Plaintiff Mary A. Garcia ("Plaintiff") currently resides, and at all relevant times alleged herein resided, in the City of Chicago. Plaintiff is an adult Hispanic-American, female

and a retired United States Air Force veteran.  Plaintiff at all relevant times was an "employee" having been employed by Defendant between August 19, 2019 and October 25, 2019, keeping her residence in the City of Chicago and a residence in Cavalier, North Dakota, near the work site Summit assigned her.

5.	Defendant Summit Technical Solutions, LLC ("Summit"), is a Colorado Limited Liability Corporation authorized to do business in, and headquartered in, Colorado Springs, CO. It was an "employer" at all relevant times and engaged in activities affecting commerce and employed over or about 189 people.

6.	Defendant Brian Sutton was a Program Manager for Summit Technical Solutions, LLC at all relevant times, and resides in the District.

7.	Defendant Tamie Sharp was and is the Human Resources Manager for Summit Technical Solutions, LLC and resides in the District.

**General Allegations**

8.	Plaintiff was first employed by Summit as an IT and Communications Systems Manager on August 19, 2019 to work at the Perimeter Acquisition Radar (PARCS) building located at the Cavalier Air Force Station in North Dakota.

9.	Summit is a Limited Liability Corporation providing PARCS services.

10.	Between August 19, 2019 and October 25, 2019, Plaintiff worked for Summit at the U.S. Airforce Cavalier, North Dakota facility as IT and Communication Systems Manager overseeing and directing the work of the Summit PARCS technical support team on site.

11.	Plaintiff, at all relevant times, performed her job in a manner that met or exceeded the expectations of her employer.

12. When the Plaintiff first arrived her supervisor was Nicholas Broyles, Summit's Program Manager. He gave the Plaintiff two major assignments and started Plaintiff's site specific training by assigning her to shadow Corky Hielder, a lead technician.

13. The first project which Broyles assigned was to diagnose and fix a field radio system provided to the Airforce by Summit that was not working properly for eighteen months. He told Plaintiff that Summit's contract was dependent on fixing the system. Plaintiff, working with the vendor that Summit had purchased the system from, diagnosed and fixed the issue by the end of September 2019 and provided training to the Airforce.

14. The second project was accounting for certain radios and computers used by the Airforce that Summit was responsible for providing. Plaintiff was told that the Base Commander would not sign off on an inventory report until Summit accounted for material that appeared to be missing. Plaintiff completed the project with a lead technician by September 15, 2019 finding that that the material at issue was in fact missing.

15. On September 9, 2019 a Brian Sutton, part owner of Summit, arrived to act as "Temporary Acting Program Manager." He called Plaintiff to a conference room and questioned Plaintiff's qualifications, her ability to do her work, and asked what her race was. He then told Plaintiff that someone "like her" cannot do "this type of important work" and that he did not trust her in meetings with the Airforce.

16. Plaintiff was qualified to do her job by virtue of her prior Airforce experience, and her Cisco engineering certifications in routers and switches, industrial control management systems, and network security implementation engineering licenses.

17. Brian Sutton stated that he did not believe that Plaintiff had a prior Air Force career.

18. On September 12, 2019, Tom Hennes, a white technician under Plaintiff's supervision, requested approval for overtime which the Plaintiff denied after checking with his military counterpart who reported that the task at issue did not require overtime. Tom Hennes told Plaintiff that he was "more important" than Plaintiff and that "she would find out."

19. Tom Hennes went to Dawn Hamrick, a white female security manager, with his overtime request. Dawn Hamrick did not undermine other white managers in Plaintiff's cohorts, but told Plaintiff she was going to approve the overtime even though she had no authority to do so.

20. Later that day Dawn Hamrick called Plaintiff to the conference room where Brian Sutton, Dawn Hamrick and Nick Broyles were seated. Plaintiff was told Tom Hennes alleged that she had committed a security breach.

21. Plaintiff did not commit a security breach at any time.

22. Sutton informed Plaintiff he had started a "three agency investigation" against her for being an "insider threat." Sutton told Plaintiff that she would no longer attend the military meetings or enter the third floor work area, and assigned himself as her replacement.

23. Plaintiff was cleared in 10 days by the military but Sutton and Summit withheld this information, and never reported to the Department of Defense that she had been cleared as it was required to do. Plaintiff is still suffering today as a result from this allegation and the investigation that Summit had not reported cleared is still having a negative impact on Plaintiff's professional and military related careers through today and has prevented Plaintiff from obtaining employment after her termination at Summit.

24. Dawn Hamrick then was told to take Plaintiff to the community center on base to write a response to the oral allegation Tom Hennes had made.

25. Once Plaintiff got in the vehicle Hamrick took Plaintiff off base without authorization for three hours.  Plaintiff was made to appear derelict when she was paged for a meeting that she could not attend because she did not hear the page which was limited to buildings on the base.

26. Plaintiff reported Dawn Hamrick's violation in talking Plaintiff off base to Tamie Sharp, Summit's Human Resource manager, but Dawn Hamrick was not disciplined or given a letter of job abandonment.

27. On September 12, 2019 Plaintiff asked for a copy of the allegation made by Tom Hennes but was not given one, and was told to write her response to the unknown alleged violation.

28. Tom Hennes, a subordinate to Plaintiff, was allowed to work under Dawn Hamrick, a white security manager, and was told not to listen to Plaintiff's instructions.

29. Beginning around September 15, 2019 and continuing to October 24, 2019 Brian Sutton repeatedly told Plaintiff's staff not to listen to her and to report directly to him.  Plaintiff's ability to do her job was impaired by Brian Sutton based on her race.

30. Beginning on or around September 16, 2019 Brian Sutton repeatedly requested Plaintiff report to his office on an almost daily basis and ranted at her that "people like her" cannot possibly know how to do the job.  He ranted that "someone like you" is not smart enough to be trusted to do this important type of work.  Brian Sutton also shared this belief with white managers.

31. Subjected to escalating racial harassment, Plaintiff called Tamie Sharp, Summit's H.R. Manager, to report Sutton's racial discrimination.  Tamie Sharp told Plaintiff to "deal with it."

32. Nicholas Broyles was effectively replaced as Program Manager shortly after September 12, 2019 by Brian Sutton.  After Sutton became Program Manager he obstructed Plaintiff's training, failing to provide any and telling her that he would create paperwork so no one would know and that he has experience doing this in the past.

33. On or about October 1, 2019 Sutton had Plaintiff report to his office, and despite withholding training from Plaintiff and despite telling her subordinates to report to him, yelled at Plaintiff saying "what makes you think you can do this job" while banging his fist on the table.

34. On or around October 1, 2019 Brian Sutton removed Plaintiff from training alongside of the Lead Technician Corky Heidler.  Ever since Plaintiff told Sutton her race Brian Sutton had continued to deny her equal opportunity to training for the PARCS specific job duties but told Plaintiff that another newly hired white manager was going to be completely trained before he even began his job as the new Program Manager.

35. Plaintiff again reported racial discrimination issues against Brian Sutton to H.R. but was again told by Tamie Sharp to "deal with it."

36. On or around October 3, 2019 Brian Sutton instructed Plaintiff's subordinates to locate her and have her wait till he arrived.   Plaintiff's staff stopped listening to Plaintiff and started reporting directly to Sutton but he did not do the same to the other 5 white managers.

37. Sutton would then call Plaintiff to his office trying to provoke Plaintiff by telling her she was not capable of doing her job.

38. On or about October 3, 2019 Plaintiff was finally given training on one of the nine subjects specific to her department but her training, on the history of PARCS, was interrupted when Sutton sent white male technicians and two white managers to interrupt Plaintiff's  training

by demanding that she submit her CISCO certification which had already provided to Summit in June.

39. On or around October 3rd and 4th Tamie Sharp, Summit's Human Resources Manager, arrived from Colorado but when Plaintiff approached to discuss her complaints of race harassment Sharp said that she did not want to talk to her about the race discrimination issues in the office area in front of other people.

40. On October 4, 2019 Plaintiff was told by Tamie Sharp that she would talk to Plaintiff but she stated that did not want to talk about the race discrimination issues until Saturday, October 5, 2019.

41. Tamie Sharp then interviewed Plaintiff's staff on October 4th asking them "what they disliked about their new manager" the Plaintiff.

42. When Plaintiff met with Sharp on October 5th, Sharp told Plaintiff to leave the technicians assigned to her alone and to not tell then what to do.   She told Plaintiff that she was "Klan" and that all the technicians were along with Dawn Hamrick.

43. On October 5, 2019 Plaintiff again tried to talk about the race discrimination complaint against Brian Sutton and Tamie Sharp told Plaintiff to drop it and not to talk about it. Plaintiff continued to ask for help and said she was not going to drop it and wanted to make a formal racial discrimination complaint with the company against Brian Sutton.  Tamie Sharp told Plaintiff that Sutton was her boss so "drop it."  Tamie Sharp told Plaintiff how unimportant she was.  Plaintiff observed Tamie Sharps facial expressions she appeared to display a form of deadly hatred and a combined anger as she looked at Plaintiff.

44. Tamie Sharp was alone with Plaintiff in the conference room with no one else to hear her talk.  Tamie Sharp told Plaintiff that she was "Klan" and so was Tom Hennes and so

were the other white technicians.   Plaintiff was told that she was racially discriminated and she better learn to deal with it, and that she is never to tell Tom Hennes or any of the other technicians what to do again.

45. Tamie Sharp also mentioned Dawn Hamrick and the other white technicians are all "Klan."

46. Tamie Sharp told Plaintiff that on Monday morning she better apologize to all the white technicians for giving them extra work and telling them to keep daily logs.

47. Plaintiff was told to deal with racial discrimination from Brian Sutton and from everyone else and just put up with it.  Tamie Sharp displayed hatred in her tone, used a loud voice with her face within less than an inch of Plaintiff left eye and told Plaintiff to drop any race discrimination complaint.   Sharp told Plaintiff that she had collected enough complaints from technicians that if Plaintiff did not drop her complaints of racial discrimination that she could use complaints against Plaintiff.

48. Plaintiff later checked with the Military Officer who investigated the September 12, 2019 allegation and found she had been cleared a long time ago.  Sutton withheld this information to keep Plaintiff from doing her job.  Plaintiff again complained to human resources, Tamie Sharp, for Sutton's delay in informing her she has been cleared but nothing was done.

49. Brian Sutton told Plaintiff he was completely training a new white manager and that he is a master of "making it look like he is giving an employee what he's supposed to before terminating them" and told the Plaintiff he would create a CPI program to make it look like he fully trained Plaintiff.   Plaintiff was not trained properly for PARCS at any time after Sutton replaced Nicholas Broyles.

50. On October 24, 2019, Plaintiff submitted a Charge of Discrimination to Tamie Sharp, Defendant's H.R. manager, in accordance with Defendant's policy. Sharp ignored the complaint and stormed out of the room they were in.

51. Later, on October 24, 2019, after Plaintiff had worked her 40 hours for the week, she left to get her car repaired, leaving after completing 40 hours just as the white managers did after working 40 hours.

52. Tamie Sharp then phoned Plaintiff on her cell phone ordering Plaintiff to make a U-turn and return to work. Plaintiff, whose turn signals were broken and who had an 18-wheeler behind her going 70 to 80 mph, told Sharp that she had worked 40 hours and could not return safely. Tamie Sharp, being told the danger, ordered Plaintiff to put herself in harm's way. This created Plaintiff's chest pains and her blood pressure to spike. Plaintiff went to a nearby the VA medical facility immediately for chest pain.

53. Plaintiff notified Tamie Sharp and Brian Sutton on October 24 and October 25, 2019 that she was having chest pains and high blood pressure problems and had gone to the VA medical center and would be out. On October 25, 2019 Tamie Sharp emailed Plaintiff a termination letter based on "Job Abandonment" and "repeated security violations" Plaintiff did not have any security violation nor did she abandon her job.

54. Plaintiff was terminated because of her race.

55. Plaintiff was terminated in retaliation for submitting a Charge of Discrimination on October 24, 2019.

56. Plaintiff at no time quit Summit Technical Solutions, LLC.

57. Plaintiff was unjustly fired by Summit Technical Solutions, LLC on October 25, 2019.

**COUNT I – § 1981 Race Discrimination**
**(Summit, Brian Sutton and Tammie Sharp)**

58. Plaintiff adopts paragraphs 1 – 57 above as paragraph 58 of Count I, as if fully set forth herein.

59. Defendants violated § 1981 in the ways alleged above by racially harassing her, interfering with her ability to do her job, inciting her staff to rebel, by generating false complaints against her, and by failing to investigate claims of racial harassment and instead threatening her, all of which created an incredibly hostile work environment.

60. Defendants violated § 1981 when it failed to discipline a white supervisor and managers holding authority positions over Plaintiff who had racially harassed Plaintiff.

61. Defendants violated § 1981 by discharging the Plaintiff because she was Hispanic and because she had complained about the racial harassment to which she had been subjected.

62. Defendant Summit is strictly liable for the racial harassment committed by Brian Sutton and Tamie Sharp and its conduct in terminating Plaintiff was unreasonable, or alternatively, was willfully and wanton or intentional.

63. As a proximate result of Defendant's illegal indifference to her federally protected rights, Plaintiff has suffered anxiety, emotional distress, continued chest pains, physical illness, and damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, MARY A. GARCIA, by counsel, respectfully prays that this Court provide the following legal remedies:

      a.      Award Plaintiff reinstatement, lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

      b.      Enjoin Defendant from discriminating against Hispanic workers;

      c.      Award Plaintiff the costs of litigation, including reasonable attorney's fees, expert fees and expenses;

      d.      Award compensatory damages;

      e.      Award punitive damages; and

      f.      Award any other relief that this Court deems just.

Plaintiff demands trial by jury.

## COUNT II – Retaliation
### (Summit)

64.      Plaintiff adopts paragraphs 1 – 63 above as paragraph 64 of Count II, as if fully set forth herein.

65.      Summit Technical Solutions, LLC., violated 42 U.S.C. § 1981, in the ways alleged above, by retaliating against Plaintiff for announcing her right to report what she reasonably believed to be racial harassment by a supervisor and inflicted materially adverse actions upon her by terminating her employment.

66.      Plaintiff's complaint to her employer of the above described racial discrimination against Hispanic American workers is a protected activity.

67.      Summit Technical Solutions, LLC. violated 42 U.S.C. § 1981 by discharging the Plaintiff for complaining about racial discrimination.

68. Summit Technical Solutions, LLC fired Plaintiff on October 25, 2019 in retaliation for submitting a Charge of Discrimination on October 24, 2019.

69. As a proximate result of Summit Technical Solutions, LLC., illegal retaliation, Plaintiff has suffered emotional distress, continued chest pains, physical illness, damage to her reputation, loss of income, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, MARY A. GARCIA, by counsel, respectfully prays that this Court provide the following equitable and legal remedies:

a. Award Plaintiff reinstatement, lost wages, including back pay, front pay, and lost fringe benefits, including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

b. Award Plaintiff the costs of litigation, including reasonable attorney's fees and expert fees and expenses;

c. Award compensatory damages;

d. Award punitive damages; and

e. Any other relief that this Court deems just.

Plaintiff demands trial by jury.

### COUNT III – Intentional Infliction of Emotion Distress
### (Summit, Brian Sutton and Tammie Sharp)

70. Plaintiff adopts paragraphs 1 – 69 above as paragraphs 70 of Count III, as if fully set forth herein.

71. As a result of the extreme, outrageous and intentional conduct alleged above and incorporated herein as if fully set forth, which was a clear violation of well-known existing law, the Plaintiff suffered severe emotion distress, including winding up in a VA hospital for chest

pain and high blood pressure caused by Defendants and thereafter suffering great embarrassment and distress.

72. As a proximate result of Defendants' illegal conduct, Plaintiff has suffered anxiety, emotional distress, physical illness, damage to her reputation, loss of income, loss of other employment, and loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff, MARY A. GARCIA, by counsel, respectfully prays that this Court enter Judgment against SUMMIT TECHNICAL SOLUTIONS, LLC, BRIAN SUTTON and TAMIE SHARP for compensatory damages, punitive damages, and the costs of this suit.

Plaintiff demands trial by jury.

/s/ Edward R. Moor
Attorney for Plaintiff

Edward R. Moor, Illinois ARDC# 6205169
Moor Law Office, P.C.
53 W. Jackson Blvd., Suite 1527
Chicago, Illinois 60604
312-726-6207
erm@moorlaw.net
erm@moorlaw.net